## J. J. SMIDDY *v.* THE CITY AND COUNTY OF HONOLULU.

### No. 2003.

SUBMITTED APRIL 14, 1931.    DECIDED MAY 13, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action in assumpsit for the recovery of the reasonable value of services alleged to have been per-

formed by plaintiff during the month of March, 1930, at the special instance of the defendant and for compensation for the use by the defendant of the plaintiff's automobile during the said month of March. The court below, trying the case without a jury, rendered a decision in favor of the plaintiff on both causes of action and entered a judgment against the defendant for the sum of $415 plus interest and costs. The case is here on exceptions.

The only exception which we deem it necessary to consider is that relating to the court's decision. The ground of this exception is that said decision is contrary to the law and the evidence and the weight of the evidence. The undisputed evidence shows that in January, 1929, the plaintiff was duly appointed engineer of pumps of the City and County of Honolulu and that he continued without interruption to discharge the duties of and to receive the salary that had been allotted to the office until March 1, 1930. On February 18, 1930, the board of supervisors abolished the salary that pertained to this office and directed that the work connected with it be taken over by the superintendent of the electric light department. The practical effect of this was to abolish the office itself, thus leaving the City and County of Honolulu without the services of a chief engineer of pumps.

John H. Wilson, who was at that time mayor and concededly an experienced engineer, thought the action of the board was wrong and that it was necessary to have the pumps under the constant supervision of a mechanical engineer, and he so informed the chief engineer of the City and County of Honolulu. Thereupon the plaintiff, with the approval of the mayor, was employed and admittedly performed the services which are the basis of the present action. Mayor Wilson, whose testimony tended more strongly to support the plaintiff's claim than that of any

954

other witness, testified: "I want to say that Mr. Smiddy's title as pump engineer may be a sort of a misnomer; that the real title should have been chief of pumps, chief of pumps, chief operator of pumps. We have about five different pumping stations, sewer pumping stations; some of them are not manned at all by anyone; they are supposed to operate automatically, but if they fail to operate a man must go there to start these pumps agoing. We have one at—two at Waikiki, one at the public baths, another one at the—near Fort Armstrong there—I mean Fort De Russey, and no one mauka of Kalakaua, there is no one there at all, and inside of two hours after these pumps stopped why the sewers would be up level with the floor, and unless someone goes there to start these pumps going why you raise Cain in the whole district, you would have sewers all over the block to the level of the street; and the other pump, it is a very large pump at the corner of River and Queen street, plant cost about $200,000, and if that breaks down—they have two pumps there, one in case of emergency is swung in. They have an ordinary laborer there, that's all, not a mechanic, just simply a laborer to send the alarm in to Mr. Smiddy if anything happens. Mr. Smiddy is the only mechanic in charge of those pumps. He has no assistant, he has no deputy. You take the fire department or the police department, if the head is gone you have someone remaining to do his duty for him, but in this case, it is the only position I know in the city government that has no assistant; if the head is gone the whole thing stops; nobody there to take care of it. Now, the pumping station here at River and Queen, if no one is there for two hours—here you have a great big pipe, over 24 inches in diameter, and sometimes it will fill up and—fill up the pit and overflow out on the street; and the same condition happens down here at Ala Moana road.

And I think the board of supervisors innocently attempted to abolish this job and they didn't complete their action, and Mr. Allen came to me and says, 'Here, what are we going to do? Let these pumps go without anyone?' I says 'It can't be done, can't be done,' I says, 'I think the board has made a mistake.' * * * Mr. Allen is the head of the department, the sewer department, and Mr. Allen appoints Mr. Smiddy, who is the one—he is the one that has the right to appoint and discharge any person in that position; so I told Mr. Allen that immaterial what the board did, he could keep a man there whether it was Mr. Smiddy or someone else, it was immaterial; he could not allow that position to be vacant; it had to be done, otherwise we would have sewers all over the city,—that is, the streets. * * * Q And do I understand your testimony to be, then, that, as mayor, at the beginning of the month of March you found there to exist an emergency such as you have described? A Yes, sir. Q Did I understand you correctly to say that the appointment of Mr. Smiddy because of this emergency met with your approval? A Yes, sir."

If the employment of plaintiff was authorized at all it was under section 1838, R. L. 1925, which is as follows: "No department, board or officer shall, under any circumstances, employ more subordinates than are authorized or provided for by the board of supervisors, or buy supplies beyond the sum furnished therefor by the supervisors, except in case of emergency approved by the mayor and within the limitations of this charter." In the enactment of this section it was evidently the purpose of the legislature to limit the power of the authorities mentioned to employ subordinates, who had not already been authorized or provided for by the board of supervisors, to cases of emergency. If under any other circumstances any of

these authorities deemed it necessary to have additional help the manner of obtaining it was provided in section 1848, which is as follows: "When any officer, board or department shall require additional deputies, clerks, or employees, application shall be made to the mayor therefor, and upon such application the mayor shall make investigation as to the necessity for such additional assistance; and if he finds the same necessary he may recommend to the supervisors to authorize the appointment of such additional deputies, clerks or employees; and thereupon the supervisors, by an affirmative vote of not less than five members, may authorize such officer, board or department to make such appointments, and provide for the compensation of such appointees. Provided, however, that nothing in this section shall be construed to prevent the head of any department recognized by the board of supervisors from using any appropriations provided by the board to be available for day laborers, informers, appraisers, or other temporary help as may be consistent with the purposes of such appropriations and the duties of such department head."

It is shown by the testimony of the mayor that in his opinion it was necessary to have the pumps designated and described by him under the constant supervision of an experienced mechanical engineer. His opinion, however, is of no value as evidence unless the facts upon which it was predicated disclose the existence of an emergency. The question therefore is whether the facts related by him constitute an emergency. Webster's International Dictionary defines emergency as "an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency." These definitions have been many times quoted with approval by courts in cases involving the power of munici-

pal authorities to exercise certain functions only when an emergency existed. See *City of Atlanta* v. *Scott,* 153 Ga. 1.

It is evident that the situation which existed at the time the plaintiff was employed is not embraced within any of these definitions. That it was not "unforeseen" by those who employed him is conclusively shown by the fact that on February 18 preceding his employment the board of supervisors abolished the salary that had been provided for his office. It was therefore known to the mayor and to the chief engineer of the City and County of Honolulu that on March 1 the municipality would be without the services of an engineer of pumps and that from that date the duties pertaining to such office would be transferred to the superintendent of electric lights. If the chief engineer and the mayor thought that this arrangement would be detrimental to the public welfare there was time enough for them to present the matter to the board of supervisors, as required by section 1848, and seek its approval of the employment of an experienced mechanical engineer. There is nothing in the evidence indicating that the superintendent of electric lights was incompetent to perform the duties which were transferred to him or that the public welfare would be imperiled by such transfer. There was, therefore, so far as the evidence shows, no "pressing necessity" for the plaintiff's employment.

Moreover, it appears from the record that on April 1, 1930, the board restored the salary which it had abolished and the plaintiff was reinstated in his position as engineer of pumps, which position he held until June 1, when he resigned. Presumably this action of the board was induced by its belief that after all the services of a mechanical engineer were necessary. Under these circumstances,

if instead of summarily employing the plaintiff without consultation with or authority from the board the chief engineer and the mayor had pursued the course prescribed by section 1848 and had fully explained to the board the necessity of having the services of an experienced mechanical engineer it is most likely that the board would at that time have authorized, as it eventually did, the employment of such engineer. The power of municipal officers and boards to expend public funds without the sanction of the board of supervisors is an extraordinary power and its exercise should be in strict conformity with the statute conferring it.

The exception referred to is sustained. The judgment of the lower court is set aside and the case is remanded with instructions to enter a judgment for the defendant.

*O. P. Soares* for plaintiff.

*W. C. Tsukiyama,* Deputy City and County Attorney, for the City and County.